# FEDERAL PUBLIC DEFENDER
## WESTERN DISTRICT OF TEXAS

**MAUREEN SCOTT FRANCO**
FEDERAL PUBLIC DEFENDER

JUDY F. MADEWELL
FIRST ASSISTANT

———

CHRISTOPHER J. CARLIN | *ALPINE*
HORATIO R. ALDREDGE | *AUSTIN*
BIANCA ROCHA DEL RIO | *DEL RIO*
REGINALDO TREJO, JR. | *EL PASO*
EDGAR HOLGUIN | *EL PASO*
ANTHONY J. COLTON | *MIDLAND*
KRISTIN M. KIMMELMAN | *SAN ANTONIO*
LEWIS B. GAINOR | *WACO*
SUPERVISORY ASSISTANTS

300 CONVENT STREET
SUITE 2300
SAN ANTONIO, TEXAS 78205-3744

June 28, 2024

TELEPHONE
(210) 472-6700

TOLL FREE
(855) 867-3570

FACSIMILE
(210) 472-4454

———

ALPINE
AUSTIN
DEL RIO
EL PASO
MIDLAND
PECOS
WACO

Mr. Lyle W. Cayce, Clerk of the Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, Louisiana 70130

Re:   *United States v. Diaz*, No. 23-50452
      Diaz's Supplemental Letter Brief

Dear Mr. Cayce,

In *United States v. Rahimi*, 602 U.S. ___ (2024), the Supreme Court applied the *Bruen* framework for analyzing Second Amendment challenges to a criminal law for the first time. The Court held that 18 U.S.C. § 922(g)(8)(C)(i)—which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that the person represents a credible threat to the physical safety of others—is constitutional.

*Rahimi* is a narrow decision that embraces *Bruen*'s focus on text, history, and tradition. *First*, the Supreme Court rejected the government's theory that the Second Amendment allows Congress to disarm anyone who is not "responsible" and "law-abiding." *Second*, the Court conducted a historical analysis and concluded that surety laws and "going armed" laws established a tradition—temporarily disarming someone found by a court to pose a credible threat to the physical safety of others—similar to § 922(g)(8). *Rahimi* endorses an incremental approach to Second Amendment challenges driven by a detailed historical analysis applied to a specific law, not sweeping generalities.

Applying that analysis here, this Court should hold that the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional. As in *Rahimi*, the government's argument that the Second Amendment protects only so-called

"law-abiding, responsible citizens" fails. And *Rahimi*'s historical analysis provides little guidance because § 922(g)(1) is very different from § 922(g)(8). The latter law imposes a temporary restriction on gun possession only after a court makes an individualized finding that a person poses a clear threat of physical violence to another. By contrast, § 922(g)(1) is a permanent and categorical ban without any such finding. Unlike in *Rahimi*, the government has failed to identify any historical evidence supporting such a far-reaching restriction. Thus, § 922(g)(1) violates the Second Amendment facially or, at the very least, as applied to Diaz.

### A. *Rahimi* rejected the government's argument that the Second Amendment protects only "law-abiding, responsible citizens."

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In *Rahimi*, the government argued that the amendment "protects only law-abiding, responsible citizens." Gov't Br. 12, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023). In doing so, the government cited several references to "law-abiding, responsible citizens" from *Heller* and *Bruen*, claiming that the Supreme Court's "precedents recognize that Congress may disarm persons who are not law-abiding, responsible citizens." *Id.* at 11.

The Supreme Court easily rejected that argument.[1] *Rahimi*, slip op. 17; *see id.* at 27 (Thomas, J., dissenting) ("The Government … argues that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.' Not a single Member of the Court adopts the Government's theory."). *First*, the Court stated that "responsible" is a "vague term" and it is "unclear what such a rule would entail." *Id.* at 17 (majority opinion). *Second*, the Court explained that the government's proposed rule did not "derive from [the Court's] case law." *Id.* It noted that *Heller* and *Bruen* used the term "responsible" to "describe the class of ordinary citizens who undoubtedly enjoy the right," but neither decision adopted that formulation to define the limits of

---

[1] At oral argument, the government said that it was not invoking the "law-abiding" prong of its proposed rule for individuals subject to § 922(g)(8). *See* Tr. of Oral Arg. 8–9, *United States v. Rahimi*, No. 22-915 (U.S. Nov. 7, 2023). So the majority opinion discussed only the "responsible" prong. *Rahimi*, slip op. 17. In his dissenting opinion, Justice Thomas—who agreed with the majority in rejecting the government's theory—provided a more robust analysis discussing both prongs. *Id.* at 27–31 (Thomas, J., dissenting).

the Second Amendment. *Id.*; *see also id.* at 27 (Thomas, J., dissenting) ("The Government's claim that the Court already held the Second Amendment protects only 'law-abiding, responsible citizens' is specious at best.").

Here too, the government argues that the Second Amendment "cover[s] only law-abiding, responsible citizens." Gov't Br. 12; *see also id.* at 13–20 (repeatedly citing references to "law-abiding, responsible citizens" from *Heller* and *Bruen*). As in *Rahimi*, that argument fails. *Rahimi* already rejected the "responsible" prong. *Rahimi*, slip op. 17. And the "law-abiding" prong fares no better. Like "responsible," "law-abiding" is vague. Is someone who drives 30 mph in a 25-mph zone "law-abiding"? *See* Tr. of Oral Arg. 8, *Rahimi, supra* (No. 22-915). The Supreme Court cast no doubt on this Court's observation that "'law-abiding' admits to no true limiting principle." *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. \_\_\_. And if the "responsible" prong of the government's proposed "law-abiding, responsible citizen" test does not limit the Second Amendment's text, then neither does the "law-abiding" prong. *Rahimi* echoes this Court's caution against "read[ing] too much into the Supreme Court's chosen ['law-abiding, responsible citizen'] epithet." *United States v. Daniels*, 77 F.4th 337, 342 (5th Cir. 2023).

The government also asserts that the Second Amendment permits Congress to disarm anyone it deems "dangerous." Gov't Br. 30–40. But this argument just repackages the government's "responsible citizen" theory. The government confirmed at oral argument in *Rahimi* that it uses the terms "not responsible" and "dangerous" interchangeably. Tr. of Oral Arg. 10–12, *Rahimi, supra* (No. 22-915). So by rejecting the government's "responsible" theory, the Supreme Court also rejected its "dangerous" theory. Indeed, "dangerous" is just as "vague" as "responsible." *See Rahimi*, slip op. 17. And interpreting historical principles "at such a high level of generality … waters down the right," *id.* at 4 (Barrett, J., concurring), by leaving the scope of the Second Amendment to "Congress's policy choice," *id.* at 29–31 (Thomas, J., dissenting).

In short, the "law-abiding, responsible citizen" theory unanimously rejected by the Supreme Court in *Rahimi* "is the Government's own creation, designed to justify every one of its existing regulations." *Id.* at 28 (Thomas, J., dissenting). "It has no doctrinal or constitutional mooring." *Id.* To the contrary, *Rahimi* confirms that the Supreme Court meant what it said when it declared that the Second Amendment right "belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008).

## B. *Rahimi*'s historical analysis of § 922(g)(8) only highlights the lack of historical support for the very different and much broader felon-in-possession ban.

Just because the Second Amendment protects all Americans, however, does not mean that the right to bear arms is "unlimited." *NYSRPA v. Bruen*, 597 U.S. 1, 21 (2022). To justify a firearm law infringing on otherwise protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. "A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Rahimi*, slip op. 7 (cleaned up). "Why and how the regulation burdens the right are central to this inquiry." *Id.*

In *Rahimi*, the Supreme Court held that the government had justified § 922(g)(8)(C)(i) by pointing to a tradition of "temporarily disarm[ing]" an "individual found by a court to pose a credible threat to the physical safety of another." *Rahimi*, slip op. 17. In particular, the Court relied on surety laws and "going armed" laws. *Id.* at 10–16. But *Rahimi*'s historical analysis provides little guidance here because § 922(g)(8) and § 922(g)(1) are very different. Given the dramatic differences between the statutes, it is hardly surprising that the government here makes only a passing reference to "going armed" laws and never mentions surety laws. In any event, neither type of law is relevantly similar to § 922(g)(1).

### 1. The law at issue in *Rahimi* has little in common with § 922(g)(1).

Besides both residing within the same section of the United States Code and restricting firearm possession, the law involving domestic restraining orders at issue in *Rahimi* (§ 922(g)(8)) and the felon-in-possession law at issue here (§ 922(g)(1)) have little in common with each other.

*First*, § 922(g)(8)(C)(i) restricts gun possession if a restraining order "includes a finding that [a] person represents a credible threat to the physical safety of [an] intimate partner or child." In other words, the statute "restricts gun use to mitigate demonstrated threats of physical violence" and applies only once a court has made an individualized finding that such a threat exists. *Rahimi*, slip op. 14. By contrast, § 922(g)(1) is a categorical ban that prohibits everyone convicted of a crime punishable by more than a year in prison from possessing a gun—without any individualized finding and whether or not they threaten others.

*Second*, the Supreme Court emphasized that § 922(g)(8)'s restriction is "temporary." *Rahimi*, slip op. 14. That is, the statute "only prohibits firearm possession so long as the defendant is subject to a restraining order. *Id.* (cleaned up). Section 922(g)(1), however, imposes a "permanent, life-long prohibition on possessing firearms." *Id.* at 2 (Thomas, J., dissenting); *see United States v. Duarte*, 101 F.4th 657, 685 (9th Cir. 2024) (discussing "§ 922(g)(1)'s no-exception, lifetime ban").

To be clear, *Bruen* and *Rahimi* require this Court to compare § 922(g)(1) to historical traditions, not its statutory neighbors. But the stark differences between § 922(g)(1) and § 922(g)(8) confirm that the Supreme Court's decision upholding the latter does not affect the historical analysis here. Indeed, the analogues that *Rahimi* relied on to hold that § 922(g)(8) fits within our Nation's tradition of firearm regulation provide no support for § 922(g)(1).

### 2. "Going armed" laws are not at all similar to § 922(g)(1).

The government mentions "going-armed" laws only in passing. Gov't Br. 31. But they are not at all similar to § 922(g)(1).

"Going-armed" laws "provided a mechanism for punishing those who had menaced others with firearms." *Rahimi*, slip op. 12. In other words, they criminalize specific—and serious—misconduct with a gun. Section 922(g)(1), on the other hand, bans a category of people from possessing firearms whether or not they have "terrif[ied] the good people of the land." *See id.* at 13. Indeed, the statute prohibits Diaz from possessing a gun even though his criminal history does not reflect that he has misused a gun, much less menaced anyone with a gun. ROA.502–04. And "going-armed" laws required a judicial determination that "a particular defendant … had threatened another with a weapon." *Rahimi*, slip op. 14. As discussed above, § 922(g)(1) requires no such determination. So "going-armed" laws are not relevantly similar to § 922(g)(1).

### 3. Surety statutes provide no support for § 922(g)(1).

The government here does not rely on surety statutes as an analogue for § 922(g)(1). *See generally* Gov't Br. 20–40. The government, however, has not been consistent on this point. In other cases, it has cited surety statutes as historical evidence that § 922(g)(1) is constitutional. *See, e.g.*, Gov't Br. 35, *United States v. Bullock*, No. 23-60408 (5th Cir. Nov. 3, 2023). In any event, surety statutes provide no support for § 922(g)(1).

Surety laws mitigated "demonstrated threats of physical violence," *Rahimi*, slip op. 14, but § 922(g)(1) contains no requirement that someone poses a threat. The surety regime was "individualized," *id.* at 10, while § 922(g)(1) is categorical. A person subject to a surety bond received "significant procedural protections" and "could obtain an exception if he needed his arms for self-defense." *Id.* at 12. Not so for someone convicted of a felony. *See Logan v. United States*, 552 U.S. 23, 28 n.1 (2007) (explaining that the provision for restoring firearm rights, 18 U.S.C. § 925(c), has been "rendered inoperative" by lack of funding). Finally, surety bonds had a "limited duration," *Rahimi*, slip op. 14, compared to § 922(g)(1)'s lifetime prohibition. In short, surety laws are not remotely similar to § 922(g)(1).

\*   \*   \*

Ultimately, the government still has not cited a single historical firearm law that imposed a categorical, life-long prohibition even remotely similar to the felon-in-possession ban. *See* Diaz Br. 16–34; Reply Br. 6–22. Thus, § 922(g)(1) is facially unconstitutional because it violates the Second Amendment in all applications. *See Rahimi*, slip op. 8. At the very least, the statute violates the Second Amendment as applied to Diaz because he is "a non-violent offender who has served his time in prison and reentered society." *See Duarte*, 101 F.4th at 661 (holding § 922(g)(1) unconstitutional as applied to non-violent felon); *Range v. Att'y Gen*, 69 F.4th 96, 105–06 (3d Cir. 2023) (en banc) (same).

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

s/ Carl R. Hennies
CARL R. HENNIES
Assistant Federal Public Defender