

U.S. Department of Justice

Criminal Division

*950 Pennsylvania Avenue N.W., Room 1252*
*Washington, DC 20530-0001*
*Tel: (202) 307-1982*

July 3, 2024

<u>VIA CM/ECF</u>

Mr. Lyle W. Cayce, Clerk
Office of the Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

  Re: *United States v. Ronnie Diaz, Jr.*, No. 23-50452
    <u>United States' Reply to Ronnie Diaz, Jr.'s Supplemental Letter Brief</u>

Dear Mr. Cayce,

  The United States submits this reply to Ronnie Diaz, Jr.'s supplemental letter brief addressing the Supreme Court's decision in *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (June 21, 2024).

  Despite Diaz's insistence that *Rahimi* is a "narrow decision," Diaz Supp. Ltr. Br. 1, the Supreme Court's decision has implications beyond that case. Several aspects of the Court's reasoning in *Rahimi* reinforce the government's position that 18 U.S.C. § 922(g)(1) is constitutional, including *Rahimi*'s clarification of the standard governing facial challenges, 2024 WL 3074728, at *6, *11; its focus on historical "principles," not "historical twins," as the metric for a statute's constitutionality, *id*. at *6; its instruction to consider historical evidence "together," rather than separately, in assessing whether a challenged statute is consistent with the Second Amendment, *id*. at *9; and its renewed recognition that prohibitions on firearm possession by felons are "presumptively lawful," *id*. at *10.

  Diaz largely elides the aspects of *Rahimi* that most undermine his argument, focusing instead on tangential aspects of the Court's opinion to maintain that Section 922(g)(1) is unconstitutional on its face and as applied to him. None of Diaz's arguments has merit.

  *First*, Diaz contends that the Supreme Court "rejected" the government's argument that the Second Amendment extends only to "law-abiding, responsible"

citizens. Diaz Supp. Ltr. Br. 3-4. But he overstates the Court's opinion. The Court explained that a person may not be disarmed "simply because he is not 'responsible'" and that its references to "responsible" citizens in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *NYSRPA v. Bruen*, 597 U.S. 1 (2022), "did not define the term and said nothing about the status of citizens who were not 'responsible.'" *Rahimi*, 2024 WL 3074728, at *11. Put another way, *Rahimi* rejected only the government's reliance on the term "responsible" without further grounding in constitutional text and history. *Id.* But it did not suggest that laws disarming certain kinds of irresponsible people—such as a person whose "possession of a firearm would endanger himself or others," Brief for the United States at 29, *United States v. Rahimi*, No. 22-915—would be inconsistent with the historical tradition. In fact, the Court held that the government *may* "disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 2024 WL 3074728, at *10. And it left open the possibility that the government may prohibit gun possession "by categories of persons thought by a legislature to present a special danger of misuse." *Id.* at *9.

More importantly, *Rahimi* did not mention the term "law-abiding," nor did it suggest that laws disarming people subject to "felony-level punishment" would violate the Second Amendment. *Rahimi* Oral Arg. Tr. at 5, 47. To the contrary, the Court said that laws prohibiting firearm possession by felons are "presumptively lawful." *Rahimi*, 2024 WL 3074728, at *10. Thus, the Court's rejection of a "responsible" standard does not suggest that it was rejecting a "law-abiding" standard as the government has used that term here.

Diaz's attacks (Diaz Supp. Ltr. Br. 3) on the purported "vagueness" of the term "law abiding" likewise fall flat. As the government has explained, that term excludes those who have committed "serious crimes defined by the felony-level punishment that can attach to those crimes," but not necessarily those whose conduct would be "classified as a misdemeanor or minor criminal conduct." *Rahimi* Oral Arg. Tr. at 5, 8. And the term "felony" has a well-accepted definition. *See Burgess v. United States*, 553 U.S. 124, 130 (2008) ("[T]he term 'felony' is commonly defined to mean a crime punishable by imprisonment for more than one year."). So understood, the term "law-abiding" is not vague.

*Second*, Diaz emphasizes the distinctions between Section 922(g)(8) and Section 922(g)(1), and he argues that the "going armed" and surety laws discussed in *Rahimi* do not support Section 922(g)(1). But by focusing on minute differences between surety and going armed laws and Section 922(g)(1), Diaz repeats the error of demanding a historical twin, *Rahimi*, 2024 WL 3074728, at *6, rather than recognizing how that historical evidence fits within the broader principle that individuals whose past conduct gives reason to believe they will use arms to cause danger to themselves or others may be disarmed. *See* Gov't Br. 31-32, 35-37.

2

In all events, Diaz's attempt to distinguish the historical evidence discussed in *Rahimi* misses the point. As detailed in the government's opening brief, Section 922(g)(1) is justified by a body of historical evidence greater than, and distinct from, that supporting Section 922(g)(8), including felony-punishment laws, *see id*. at 25-30, Second Amendment proposals from the ratification debates, *id*. at 33-34, and loyalist laws, *id*. at 32-33, among other evidence. These distinct historical sources, independently and together, justify the government's authority to disarm those who have committed serious criminal offenses and whose firearm possession would pose a risk of harm to themselves or others.

*Third*, Diaz contends that Section 922(g)(1) is facially unconstitutional because the government "has not cited a single historical firearm law that imposed a categorical, life-long prohibition" on firearm possession. Diaz Supp. Ltr. Br. 6. Diaz effectively imports the two errors that *Rahimi* addressed into his own analysis, first by requiring the government to identify the "historical twin" that *Rahimi* disclaimed, 2024 WL 3074728, at *6, and then by invoking a standard for facial challenges the Supreme Court rejected, *id*. at *10. Diaz's failure to even try to "establish that no set of circumstances exists under which [Section 922(g)(1)] would be valid," *id*., and the government's identification of some constitutional applications of the statute, Gov't Supp. Ltr. Br. 5, are fatal to his facial challenge.

*Finally*, Diaz contends that Section 922(g)(1) violates the Second Amendment as applied to him because he is "a non-violent offender who has served his time in prison and reentered society." Diaz Supp. Ltr. Br. 6. This characterization severely understates his criminal history—including the seriousness of his felony convictions, each of which demonstrates his potential for future dangerousness. It also ignores the circumstances of the underlying offense. *See* Gov't Opening Br. 42-44. Diaz invokes the Third Circuit's now-vacated decision in *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (en banc), *vacated*, 2024 WL 3259661 (June 2, 2024), and the Ninth Circuit's decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), but it is unlikely that even those courts would conclude that Section 922(g)(1) is unconstitutional as applied to him. *See, e.g.*, *United States v. Dorsey*, 2024 WL 3196742, at *4 (3d Cir. June 24, 2024) (determining that the defendant's conviction for "violating a state firearm law" was "arguably dangerous," making him not "like Range").

For these reasons and those explained in the government's prior briefing, the district court's judgment should be affirmed.

3

|  | Respectfully submitted, |
|---|---|
| JAIME ESPARZA<br>United States Attorney | NICOLE M. ARGENTIERI<br>Principal Deputy Assistant Attorney General |
| ZACHARY RICHTER<br>Deputy Appellate Chief | LISA H. MILLER<br>Deputy Assistant Attorney General |
| LAUREN BRADLEY<br>Assistant United States Attorney<br>Western District of Texas | /s/ Mahogane D. Reed<br>MAHOGANE D. REED<br>Attorney, Appellate Section<br>Criminal Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave., N.W.<br>Washington, DC 20530<br>(202) 615-1170<br>mahogane.reed@usdoj.gov |

## CERTIFICATE OF COMPLIANCE

1.   This letter complies with the Court's June 21, 2024, order because it does not exceed three pages.

2.   This letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this letter has been prepared in a proportionally spaced, 14-point serif typeface using Times New Roman.

*/s/ Mahogane D. Reed*
Mahogane D. Reed

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2024, I electronically filed the foregoing with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Mahogane D. Reed*
Mahogane D. Reed
